# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 8, 2018          Decided July 3, 2018

No. 15-3027

UNITED STATES OF AMERICA,
APPELLEE

v.

CARLOS AGUIAR, ALSO KNOWN AS LOS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cr-00355-3)

*Erica J. Hashimoto*, appointed by the court, argued the cause for appellant. On the briefs were *Steven H. Goldblatt*, appointed by the court, *Amit R. Vora*, Supervisory Attorney, and *Caleb Redmond* and *Joseph Flanagan*, Student Counsel.

*Carlos Aguilar*, *pro se*, filed the brief for appellant.

*James A. Ewing*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman*, *T. Anthony Quinn*, and *Nicholas P. Coleman*, Assistant U.S. Attorneys. *Suzanne G. Curt*, Assistant U.S. Attorney, entered an appearance.

Before: ROGERS, GRIFFITH, and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

Opinion, dissenting in part, filed by *Circuit Judge* GRIFFITH.

ROGERS, *Circuit Judge*:  This is an appeal from the denial of a collateral attack pursuant to 28 U.S.C. § 2255 on a conviction by a jury of crimes relating to a series of armed bank robberies.  Carlos Aguiar contends the district court erred in denying the motion because his trial and appellate counsel failed to object to the closure of *voir dire*, in violation of his Sixth Amendment right to a public trial, and because trial counsel failed to explain the sentencing consequences under 18 U.S.C. § 924(c) of rejecting the government's plea offer and going to trial, in violation of his Sixth Amendment right to the effective assistance of counsel.  The first contention fails in light of *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), because Aguiar has not shown prejudicial error from the *voir dire* closure.  The second contention regarding the plea offer requires a remand because "the motion and the files and records of the case" do not "conclusively show" Aguiar is "entitled to no relief."  28 U.S.C. § 2255(b).

**I.**

In superseding indictments, Aguiar and five co-defendants were charged with RICO and armed bank robbery conspiracies, two armed bank robberies, three counts of unlawful possession of a firearm by a convicted felon, and two counts of possession or use of a fully automatic assault weapon in connection with a crime of violence in violation of 18 U.S.C. § 924(c)(1)(B)(ii). Earlier Aguiar had rejected the government's offer of a plea to

three counts: RICO conspiracy, felon in possession of a firearm, and § 924(c)(1)(B)(ii), with a likely total sentence of between 47 and 51 years, including a mandatory 30 years on the § 924(c) count.  A jury found Aguiar guilty of all charges except possession or use of fully automatic assault weapons, instead finding him guilty of possession or use of semi-automatic weapons in violation of §§ 924(c)(1)(B)(i) & (C)(i). He was sentenced to an aggregate term of 60 years' imprisonment, including mandatory consecutive terms of 10 and 25 years' imprisonment for the § 924(c) convictions, and ordered to pay restitution of $361,000.  On direct appeal, this court affirmed the judgment of conviction.  *See United States v. Burwell, et al.*, 642 F.3d 1062 (D.C. Cir. 2011), *aff'd*, 690 F.3d 500 (D.C. Cir. 2012).

Thereafter, on September 12, 2012, Aguiar, *pro se*, filed a motion pursuant to 28 U.S.C. § 2255(a) to vacate the judgment of conviction on the grounds of ineffective assistance of trial counsel.  He argued that counsel failed to investigate and object to the exclusion of Aguiar's family members from *voir dire*, in violation of his Sixth Amendment public-trial right, and failed to explain to him the sentencing consequences for the two § 924(c) counts of rejecting the plea offer and going to trial, in violation of his Sixth Amendment right to effective assistance of counsel.  Under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Aguiar had to show counsel's performance was deficient "under prevailing professional norms," *id*. at 688, and that the deficient performance was prejudicial, creating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694. The district court denied Aguiar's motion without an evidentiary hearing because he had not proffered factual allegations to require a hearing and "the files and records of the case" showed he was entitled to no relief.  *United States v.*

*Aguiar*, 82 F. Supp. 3d 70, 74, 76 (D.D.C. Feb. 12, 2015); 28 U.S.C. § 2255(b).  As the court resolved in *United States v. Abney*, 812 F.3d 1079, 1086–87 (D.C. Cir. 2016), our review of the denial of a § 2255 motion on the ground of ineffective assistance of counsel is *de novo.  See United States v. Stubblefield*, 820 F.3d 445, 448 (D.C. Cir. 2016) (citing *Abney*).  The district court's denial of an evidentiary hearing is reviewed for abuse of discretion.  *See United States v. Morrison*, 98 F.3d 619, 625–26 (D.C. Cir. 1996).[1]

## II.

The protections afforded by the Sixth Amendment to the Constitution that "the accused shall enjoy the right to a . . . public trial" extend to *voir dire*. *Presley v. Georgia*, 558 U.S. 209, 213 (2010).  *Voir dire* is "presumptively . . . a public process with exceptions only for good cause shown." *Press-Enterprise Co. v. Sup. Ct. of Cal.*, 464 U.S. 501, 505 (1984).  Consequently, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller v. Georgia*, 467 U.S. 39, 48

---

[1]  Upon Aguiar's motion for a certificate of appealability ("COA"), *see* 28 U.S.C. § 2253(c), a special panel initially granted the motion only on Aguiar's *voir dire* closure challenge.  Responding to his motion for partial reconsideration, the panel referred all of his challenges to the merits panel.  The government, which objected in the district court that Aguiar's reconsideration motion was untimely, has abandoned that position on appeal.  Appellee's Br. 40.  The court has no occasion to address whether, as Aguiar maintains, a merits panel has inherent authority to expand a COA issued by a special panel.

(1984); *see CNN v. United States*, 824 F.2d 1046, 1048 (D.C. Cir. 1987).

It is undisputed that the courtroom where *voir dire* was conducted for the trial of Aguiar and his co-defendants was closed, that defense counsel did not object, and that the district court did not conduct the *Waller* test. According to affidavits of Aguiar's mother and sister, when they attempted to observe *voir dire* on the first day of trial, a court security officer "informed [them] that [they] could not enter the courtroom because the jury selection had started, and that nobody was being allowed to enter until the jury selection was finished." Affid. of Lily Aguiar, at 1 (Sept. 12, 2012); *see* Affid. of Mariana Aguiar, at 1 (Sept. 12, 2012). The district court concluded that the alleged closure was "so trivial that it did not violate the Sixth Amendment," *Aguiar*, 82 F. Supp. 3d at 84–85 (citing *United States v. Perry*, 479 F.3d 885, 890 (D.C. Cir. 2007)), and confirmed it had "never ordered that the courtroom be closed" and "that Aguiar's mother and sister were not permitted into the courtroom by a security officer who was not acting under the authority of the [district] [c]ourt," *id.* at 84.

When, as here, a defendant first objects to a *voir dire* closure in a collateral attack on his conviction, the Supreme Court instructed in *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017), that, notwithstanding a structural error, *see id.* at 1908, "not every public-trial violation will in fact lead to a fundamentally unfair trial" or "always deprive[] the defendant of a reasonable probability of a different outcome," *id.* at 1911.

> [W]hen a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically. Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case

> or, as the Court has assumed for these purposes, to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair.

*Id.* (internal citation omitted). The Court rejected Weaver's challenge to the closure of *voir dire* because he had "offered no evidence or legal argument" that but for counsel's error there was a reasonable probability of a different outcome, or that his trial was rendered fundamentally unfair. *Id.* at 1912–13.

In circumstances strikingly similar to Aguiar's, Weaver's mother and her minister were excluded from the courtroom for two days during *voir dire*. *Id.* at 1913. "The closure was limited to the jury *voir dire*; the courtroom remained open during the evidentiary phase of the trial; the closure decision apparently was made by court officers rather than the judge; there were many members of the venire who did not become jurors but who did observe the proceedings; and there was a record made of the proceedings that does not indicate any basis for concern, other than the closure itself." *Id.* Weaver made "no suggestion that any juror lied during *voir dire*; no suggestion of misbehavior by the prosecutor, judge, or any other party; and no suggestion that any of the participants failed to approach their duties with the neutrality and serious purpose that our system demands." *Id.*

Assuming Aguiar's counsel's failure to object to the closure of *voir dire* constituted deficient performance under *Strickland*'s first prong, *Weaver* is dispositive of *Strickland*'s second prong. Aguiar proffered no evidence that had the district court conducted *voir dire* in open court, there was a reasonable probability the result of the proceeding would have been different, or that the *voir dire* proceedings were fundamentally unfair. He, like Weaver, suggests no

misconduct by any party. The closed proceedings were held on the record, in the presence of all parties and their counsel, and Aguiar points to nothing in the closed proceedings that would remove his challenge from the reach of *Weaver*. The evidentiary and sentencing phases of the trial were held in open court, as were peremptory strikes and the district court's final rulings on pretrial motions. Aguiar's suggestion that during certain gaps in the closed *voir dire* proceedings the district court impermissibly discussed ongoing logistical, procedural, and evidentiary issues with the parties overlooks the record showing that the district court used these breaks to reference issues for final resolution later in open court. As in *Weaver*, then, Aguiar "does not indicate any basis for concern, other than the closure itself." *Id.* Accordingly, the district court properly found that he failed to show the requisite prejudice under *Strickland*.

## III.

The Sixth Amendment right to the effective assistance of counsel extends to the "critical stage" of plea bargaining. *Lafler v. Cooper*, 566 U.S. 156, 162–63, 165 (2012). Constitutionally adequate representation requires counsel to adhere to "prevailing professional norms" and thereby "play[] a role that is critical to the ability of the adversarial system to produce just results." *Strickland*, 466 U.S. at 685, 688. The Supreme Court concluded "the proper standard for attorney performance is that of reasonably effective assistance," *id.* at 687, with the consequence that counsel's representation is constitutionally deficient if it falls "below an objective standard of reasonableness," *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Strickland*, 466 U.S. at 687–88. Reasonably effective assistance requires that counsel be more than a mere bystander and avoid making "errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

The duty to provide reasonably effective representation at sentencing presumes knowledge of statutory penalties and familiarity with the U.S. Sentencing Guidelines. *See Abney*, 812 F.3d at 1089; *United States v. Gaviria*, 116 F.3d 1498, 1512 (D.C. Cir. 1997). Representation is deficient when counsel fails to protect his client's interests in accord with the prevailing norms for criminal defense counsel or offers a "'plainly incorrect' estimate of the likely sentence due to ignorance of applicable law of which he 'should have been aware.'" *United States v. Booze*, 293 F.3d 516, 518 (D.C. Cir. 2002) (quoting *Gaviria*, 116 F.3d at 1512). The former situation is illustrated in *Abney*, 812 F.3d at 1092, where counsel's failure to seek a continuance of sentencing so his client could benefit from a likely imminent favorable amendment to the Sentencing Guidelines, as other defense counsel had done, meant Abney was unable to benefit from a five-year reduction in a mandatory minimum that would have been available. The latter situation is illustrated in *Booze*, 293 F.3d at 518–19, where counsel's erroneous advice about a likely sentence upon conviction at trial resulted in the defendant rejecting a plea offer involving a sentence two-thirds lower than the sentence that was imposed after trial. Similarly, in *Gaviria*, 116 F.3d at 1512, counsel's advice, contrary to the court's precedent, that his client would be sentenced as a career offender, and thereby face thirty years to life imprisonment, resulted in Gaviria's rejection of a plea offer with a likely sentence of fifteen to twenty-two years' imprisonment.

The Supreme Court has clarified that counsel's representational duty extends to advising the defendant about the consequences of pleading guilty beyond the criminal conviction itself. In *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010), the Court concluded that even though removal is a civil

proceeding, "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." Because the law has "enmeshed criminal convictions and the penalty of deportation," *id*. at 365–66, and because "deportation is a particularly severe penalty," *id.* at 365 (internal quotation marks and citation omitted), the Court held counsel's failure to advise the defendant that pleading guilty would make him eligible for deportation was contrary to reasonable professional norms under *Strickland*'s first prong, *id*. at 368–69. Counsel must advise defendants of "clear" and "easily determined" immigration-related collateral consequences of entering a guilty plea. *Id*. Because "there is no relevant difference between an act of commission and an act of omission in this context," *id*. at 370 (internal quotation marks and citation omitted), the Court rejected the government's view that *Strickland* should be limited to situations where the defendant has received "affirmative misadvice" on matters in the criminal case, *id*. at 369–70.

Aguiar contends he was denied the effective assistance of counsel when trial counsel failed to explain to him that, upon rejecting the plea offer and going to trial, the government's superseding indictment would include more than one § 924(c) count and increase his mandatory minimum sentencing exposure, even to as much as life imprisonment. He maintains his "counsel needed only elementary reasoning to know what would happen if Aguiar rejected the plea offer." Appellant's Br. 49. In an affidavit attached to his § 2255 motion, Aguiar states:

> My attorney . . . informed me verbally that the government had offered me a thirty (30) year [mandatory minimum] plea to resolve my case. He failed to inform me and explain to me the consequences of the consecutive sentences exposure[]

I was actually facing, if I was convicted at trial. He failed to advise me regarding the d[e]sirability of accepting the plea offered, rather than to proceed to trial. Had I been aware[] that I was actually facing a total of 35-years for the two (2) § 924(c) counts consecutively with an additional 30-years for the remaining counts, I would ha[ve] accepted the 30-year plea offer and pleaded guilty in a timely manner instead of proceeding to trial.

The district court rejected Aguiar's argument without holding an evidentiary hearing, reasoning that Aguiar's "counsel's performance did not fall below an objective standard of reasonableness under prevailing professional norms by failing to explain to him the sentencing implications of violations to which he was not charged at the time that the plea offer was extended and expired without acceptance." *Aguiar*, 82 F. Supp. 3d at 80.

Even assuming the absence of pending charges would distinguish Aguiar's circumstances from those of the defendants in *Abney*, *Booze*, and *Gaviria*, the question after *Padilla* is whether there were "clear" and "easily determined" severe sentencing consequences of Aguiar's rejection of the plea offer. *Padilla*, 559 U.S. at 368–69. The indictment pending at the time of the plea offer repeatedly described Aguiar's involvement in four armed bank robberies: it stated three times that Aguiar acted "while armed with firearms," once that he "equi[pped] [himself] with handguns, pistols, [and] assault weapons," three times that he was "armed with assault weapons and pistols," three times that he "demand[ed] money at gunpoint," and once that he "hid . . . weapons." Indictment at 2–8 (Aug. 5, 2004). The references to possession and use of a firearm during commission of a violent crime would alert competent counsel that the government had

grounds to seek Aguiar's indictment on multiple counts of violating § 924(c). Doing so would be consistent with prosecutorial policy on firearms offenses in the *United States Attorneys' Manual*.[2] But even if the indictment alone did not alert counsel, the plea offer did. Counsel did not have to be clairvoyant. The plea offer included a § 924(c) count and stated that the government would "not file *additional* § 924(c) violations" if Aguiar accepted the plea offer. Plea Offer at 2 (Sept. 17, 2004) (emphasis added).

In *Padilla*, the Supreme Court, in reaffirming that "negotiation of a plea bargain is a critical phase of litigation for

---

[2] Section 112 of the *United States Attorneys' Manual, Criminal Resource Manual* (1997), states in relevant part:

> Charges under 18 U.S.C. § 924(c) can be filed whenever a firearm is used or carried during the course of a violent or drug trafficking crime. The mandatory consecutive and enhanced punishment under this section, which can significantly increase a sentence especially where firearms are used in numerous criminal acts of the gang, make this statute one of the most potent tools in prosecuting gang activity, especially those engaged in multiple criminal acts. . . . Firearms violations should be aggressively used in prosecuting violent crime. They are generally simple and quick to prove. The mandatory and enhanced punishments for many firearms violations can be used as leverage to gain plea bargaining and cooperation from offenders.

*Available at* www.justice.gov/usam/criminal-resource-manual-112-firearms-charges. Similarly, just months prior to Aguiar's arrest and indictment, the Attorney General "strongly encourag[ed]" the use of "statutory enhancements" like § 924(c). Hon. John Ashcroft, U.S. Dep't of Justice, *Memorandum from Attorney General Setting Forth Charging & Plea Policies*, 16 F. Sentencing Rep. 129, 131 (Sept. 22, 2003).

purposes of the Sixth Amendment right to effective assistance of counsel," concluded that counsel's Sixth Amendment duty to provide reasonable assistance to his client extends beyond the pending charges in an indictment. 559 U.S. at 373. Although at the time the plea offer was pending Aguiar had yet to be indicted for violating § 924(c), it would have been "clear" and "easily determined" by competent counsel that upon rejection of the plea offer the government would seek a superseding indictment charging Aguiar with more than one § 924(c) count and that upon his conviction on both counts the "severe" sentencing consequences, *id.* at 365, extended to mandatory life imprisonment under § 924(c)(i)(C)(ii). Even if Aguiar were to be convicted only of possession or use of semi-automatic weapons, his mandatory sentence would increase to 35 years' imprisonment under §§ 924(c)(1)(B)(i), (C)(i). Reasonably effective assistance under *Strickland*'s first prong required counsel to advise Aguiar of these sentencing consequences of rejecting the plea offer. A failure to do so is legally indistinguishable from affirmatively misinforming the defendant as a result of ignorance of relevant law. *See id.* at 370.

Whether Aguiar can also show prejudice under *Strickland*'s second prong depends on whether there is a reasonable probability that the "outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. That is, "but for the ineffective advice of counsel there is a reasonable probability that . . . the defendant would have accepted the plea and the prosecution would not have withdrawn it . . . , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164.

13

Aguiar points to the fact that the "loss of the plea opportunity led to a trial resulting in a conviction on more serious charges [and] the imposition of a more severe sentence," namely, 60 years' imprisonment (including 35 years' mandatory minimum imprisonment on the § 924(c) counts). Appellant's Br. 51 (quoting *Lafler*, 566 U.S. at 168). Had he accepted the plea offer, Aguiar faced a mandatory minimum sentence of 30 years for one count of possession or use of a fully automatic assault weapon during a crime of violence under § 924(c)(1)(B)(ii). By rejecting the plea offer and going to trial on two counts of § 924(c), upon conviction he faced either mandatory life for possession or use of a fully automatic assault weapon, or a 35-year mandatory minimum (five years greater than under the plea offer) for possession or use of a semi-automatic assault weapon. Had he known that by going to trial he risked these "severe" mandatory sentencing consequences, *Lafler*, 566 U.S. at 166, he maintains there is a "reasonable probability" he would have accepted the plea offer, *id.* at 164.

The government responds that Aguiar cannot show either deficiency or prejudice under *Strickland* because he was informed of the risk of additional § 924(c) charges prior to rejecting the plea offer. The record evidence on which the government relies is less illuminating than the government suggests. At a September 2004 status hearing on the last day the plea offer was available, the prosecutor stated that the government would "likely . . . supersede with a RICO indictment," which "will also add other incidents, including two incidents of assault." Status Hg. Tr. at 11 (Sept. 27, 2004). At no point did the prosecutor mention the possibility and sentencing implications of multiple § 924(c) convictions. Rather, the prosecutor only stated that the government would add "other incidents" to the four already-charged bank robberies.

14

At a January 2005 status hearing, after Aguiar had rejected the plea offer and a superseding indictment had been filed charging him with two violations of § 924(c), neither the prosecutor nor the district court mentioned that upon conviction Aguiar would face mandatory life imprisonment for possession or use of a fully automatic assault weapon, or five additional years of mandatory imprisonment upon conviction of possession or use of a semi-automatic assault weapon. The district court commendably sought to "to discuss the pleas and put them on the record" in order to ensure no defendant, if convicted at trial, would claim in a later § 2255 motion "that they did not get a full discussion of the plea." Status Hg. Tr. at 15 (Jan. 31, 2005). But when Aguiar and his counsel were invited to step forward, no mention was made of mandatory minimum sentences of life imprisonment or an additional five years. The prosecutor stated that Aguiar "is charged with having personally participated in four of the bank robberies," that a plea offer was made to one count of § 924(c), *id.* at 33, and that Aguiar's likely Guidelines sentence under the plea was between about 35 and 37 years (including the 30-year mandatory minimum for the one § 924(c) violation), with the possibility of 30 years to life imprisonment if he were found to be a career offender, *id.* at 34. Aguiar's counsel stated without elaboration that he had discussed with Aguiar career offender status, the difference between a RICO conspiracy and the drug conspiracy, and what § 924(c) involves. *Id.* at 35. Aguiar confirmed that he had this discussion with counsel but he too did not elaborate. *Id.* When the district court inquired what would happen at trial, the prosecutor stated, referring to a sentencing analysis:

> The differences mainly . . . would be three levels for acceptance of responsibility and . . . whether or not there are one or more than one conviction under

> § 924(c). But frankly, Your Honor, adding, all it really does to the calculation is add back in the three additional level[s] that he otherwise would get for acceptance of responsibility, and so his new range would be 457 to 481 months [38 to 40 years].

*Id.* at 35–36. The record on appeal does not include the prosecutor's sentencing analysis nor otherwise indicate it was made part of the record of this status hearing. Absent elaboration of the advice counsel gave Aguiar about § 924(c), this colloquy does not show that he was specifically advised of the mandatory minimum, consecutive, sentencing consequences of rejecting the plea offer, including life imprisonment upon conviction of two § 924(c) counts.

What Aguiar needed to know before he decided whether or not to accept the plea offer was the worst-case scenario if he rejected the plea and went to trial. Although this "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, "[t]he record is quite sketchy regarding plea discussions," *United States v. Winstead*, 890 F.3d 1082, 1088 (D.C. Cir. 2018). "[T]he motion and the files and records of the case" do not "conclusively show" Aguiar was advised that a consequence of rejecting the plea offer was mandatory life imprisonment or at least a longer mandatory minimum sentence. 28 U.S.C. § 2255(b). Consequently, the district court erred in denying his ineffective assistance of counsel claim without holding an evidentiary hearing given the inconclusiveness of the record and the failure to apply the legal standard announced in *Padilla*, 559 U.S. at 365, 368–69. Therefore, we remand for an evidentiary hearing on this part of Aguiar's Sixth Amendment challenge. 28 U.S.C. § 2255(b); *cf. Winstead*, 890 F.3d at 1088 (citing *United States v. Rashad*, 331 F.3d 908, 910 (D.C. Cir. 2003)). Aguiar will have the

opportunity to proffer any "contemporaneous evidence" about "how he would have pleaded but for his attorney's [alleged] deficiencies," as did the defendant in *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

Our colleague's partial dissent is twice flawed. First, our colleague ignores that the district court's reason for denying an evidentiary hearing was erroneous as a matter of law, in view of the inconclusive state of the record and the standard announced in *Padilla*, 559 U.S. at 365, 368–69, and that such error was necessarily an abuse of discretion. *See, e.g.*, *Koon v. United States*, 518 U.S. 81, 100 (1996) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)); *Kickapoo Tribe v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995). Second, our colleague would affirm the district court and hold that Aguiar has not established *Strickland* prejudice for lack of contemporaneous evidence. *See Lee*, 137 S. Ct. at 1967. This misreads *Lee*. In *Lee*, the Supreme Court addressed the contemporaneous evidence that had been produced at the evidentiary hearing on Lee's § 2255 claim of ineffective assistance of counsel, *id.* at 1967–68; such a hearing has yet to be held on Aguiar's § 2255 motion. The question now is whether Aguiar has made sufficient allegations to warrant an evidentiary hearing to prove his claim, not whether he has satisfied his ultimate burden of proof. *See* 28 U.S.C. § 2255(b). Our colleague would evidently conclude that Aguiar could not show prejudice even if his counsel never advised of the § 924(c) sentencing risk and it were clear Aguiar would have accepted the plea had that advice been given because Aguiar did not contemporaneously state he would have accepted the plea. Nothing in *Lee* supports this approach. The gravamen of Aguiar's claim is that because of counsel's deficiency, he had no reason to suspect he needed to make such a statement, and thus did not know the full consequence of his decision to reject the plea. The Supreme Court did not suggest in *Lee* that a

defendant must hypothesize his counsel's advice might be erroneous and state contemporaneously that his plea decision would differ if that were so.

Accordingly, we affirm the denial of Aguiar's Sixth Amendment challenge on the ground of *voir dire* closure, and we reverse and remand the plea bargaining challenge.

GRIFFITH, *Circuit Judge*, dissenting in part: I cannot join Part III of the majority opinion. Even assuming that Aguiar's counsel performed deficiently when explaining the plea offer, Aguiar failed to present sufficient evidence of prejudice. The only evidence Aguiar advanced to make this showing was an affidavit he executed years after his conviction. The Supreme Court has held that such post hoc assertions, without more, are insufficient to show prejudice. I see no abuse of discretion in the district court's decision to forgo an evidentiary hearing, and I would affirm its judgment in full.

\*       \*       \*

Aguiar petitioned for relief under 28 U.S.C. § 2255. In this context, we review for abuse of discretion the district court's decision to deny an evidentiary hearing. *See United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996) (collecting cases). The district court's decision not to hold a hearing should be "generally respected as a sound exercise of discretion," especially where, as here, "the judge deciding the section 2255 motion also presided at petitioner's trial." *United States v. Gooch*, 842 F.3d 1274, 1280 n.3 (D.C. Cir. 2016). Our cases have repeatedly stressed that this standard is highly deferential. *See, e.g.*, *United States v. Baxter*, 761 F.3d 17, 25 n.5 (D.C. Cir. 2014); *United States v. Toms*, 396 F.3d 427, 437 (D.C. Cir. 2005); *United States v. Pollard*, 959 F.2d 1011, 1030-31 (D.C. Cir. 1992). Indeed, one is hard-pressed to identify a *single case* over the past several decades in which we have found such an abuse of discretion.

Although the majority acknowledges that we review for abuse of discretion, Maj. Op. at 4, it does not seem to apply that standard. Instead, the majority reverses the district court and remands the case because the record is "quite sketchy regarding plea discussions." *See id.* at 15. This standard is drawn from cases in which defendants brought ineffective-assistance claims on *direct appeal*, not on collateral review under § 2255.

*See id.* (relying on *United States v. Winstead*, No. 12-3036, slip op. at 13 (D.C. Cir. May 25, 2018), and *United States v. Rashad*, 331 F.3d 908, 912 (D.C. Cir. 2003)). These cases do not provide the correct standard for determining whether to remand Aguiar's claim. When a defendant raises an ineffective-assistance claim on direct appeal, our "normal practice" is to remand when we "cannot definitely reject" the claim. *Winstead*, slip op. at 13 (citing *Rashad*, 331 F.3d at 912). We follow that practice because the district court is the forum best suited to pass on such claims in the first instance. *See United States v. Eshetu*, 863 F.3d 946, 957 (D.C. Cir. 2017). Here, however, the majority concludes in the § 2255 context that the district court abused its discretion by failing to hold an evidentiary hearing. I see no basis for that conclusion.

To succeed on his ineffective-assistance claim, Aguiar must satisfy *both* of *Strickland*'s prongs: he must show that his lawyer's performance was deficient and that this deficiency prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687, 697 (1984). Here, the majority did not need to address the performance prong because, even assuming a deficient performance, the record contains virtually no evidence of prejudice.

To establish prejudice, Aguiar "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The probability of a different result must be "substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). This showing is almost as demanding as a "more-probably-than-not standard." *Id.* at 111-12. In the plea-offer context, Aguiar must show a "reasonable probability" that he would have accepted the plea offer if his attorney had performed adequately. *See, e.g.*, *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). Specifically, he must present

evidence that he would have accepted the plea offer if his lawyer had correctly explained the sentencing exposure he could face if the government sought a new indictment charging him with additional firearm crimes. Aguiar failed to present any evidence that could make this showing.[1]

Aguiar's only evidence that he would have accepted the plea offer is his affidavit, which he executed approximately six years after his conviction. There he said: "Had I been aware[] that I was actually facing a total of 35-years for the two (2) § 924(c) counts, consecutively with an additional 30-years for the remaining counts, I would ha[ve] accepted the 30-year plea offer and pleaded guilty in a timely manner instead of proceeding to trial." *See* Maj. Op. at 10. The Supreme Court has told us that these assertions, without more, are insufficient to show prejudice.

In *Lee v. United States*, 137 S. Ct. 1958 (2017), the Court set out a clear rule for assessing prejudice in this plea-offer context. We must look for *contemporaneous* evidence of whether the defendant would have accepted his plea offer; the defendant's assertions after conviction are not enough: "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to

---

[1] Aguiar must also "demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Missouri v. Frye*, 566 U.S. 134, 147 (2012). The Supreme Court has emphasized that this "showing is of particular importance because a defendant has no right to be offered a plea, nor a federal right that the judge accept it." *Id.* at 148-49 (internal citations omitted). Aguiar did not even attempt to make this showing, and the majority pays this shortcoming no mind. This failure alone justifies affirming the district court.

contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 1967.[2]

The record contains no contemporaneous evidence that Aguiar ever considered accepting his plea offer. In fact, it suggests just the opposite. At the January 2005 status hearing, the district court repeatedly emphasized that the hearing was intended to ensure that the defendants had understood their plea offers and would not later claim in a § 2255 challenge that they "did not get a full discussion of the plea." J.A. 157. By that time, Aguiar had already been charged under a superseding indictment with the additional firearm crime—the charge at the center of Aguiar's § 2255 claim. *See* J.A. 76-109. Thus, Aguiar already knew at the status hearing that he would face more charges at trial than he would have under the plea offer. Yet even with this information, Aguiar never once hinted during the hearing that he had considered accepting the plea offer. Nor did he express any surprise or concern about the additional firearm charge in the superseding indictment.

At the hearing, Aguiar's counsel confirmed to the district court that he and Aguiar had discussed the plea offer, Aguiar's career offender status, and what § 924(c) involves. J.A. 176-77. Counsel also suggested to the court that Aguiar's rejection

---

[2] The majority suggests that *Lee* is inapplicable because the defendant in that case had received an evidentiary hearing but Aguiar has not. *See* Maj. Op. at 16. That reading is unpersuasive. *Lee* never purported to limit its applicability to petitioners who have already received an evidentiary hearing. To the contrary, *Lee* set out a general instruction about the *kind* of evidence courts should consider when assessing prejudice in the plea-offer context, *i.e.*, contemporaneous evidence. Thus, even though the *amount* of evidence Aguiar needs to secure an evidentiary hearing is less than Lee needed to prevail on the merits, Aguiar's claim still fails because he has not presented *any* evidence of the kind that can show prejudice under *Lee*.

of the plea offer had been unwavering: "He rejected it then and he's rejecting it now." J.A. 176. After addressing counsel, the court turned to Aguiar and asked, "Is this the discussion, Mr. Aguiar, that you had with your attorney about the plea offer . . . ?" J.A. 177. Aguiar said yes. *Id.*

In the absence of any contemporaneous evidence, Aguiar offers only a post hoc assertion that he would have accepted his plea offer. *See* Aguiar Br. 52. But that assertion is not enough under *Lee*.[3] The majority seems to shift the burden onto the government to show that Aguiar was "specifically advised" that his sentencing exposure could increase if he opted for trial. *See* Maj. Op. at 15. But that is not where the burden lies. To establish prejudice, Aguiar must show a "reasonable probability" that he would have accepted the plea offer, and he has not come close to satisfying that standard.

Of course, it is always possible that a district court may find additional evidence on remand. But we review for abuse of discretion, not the mere possibility of finding additional evidence. I would affirm the district court's decision to forgo an evidentiary hearing as a sound exercise of its discretion.

I respectfully dissent.

---

[3] Aguiar's affidavit is unhelpful for yet another reason. It is a particularly poor indicator of whether Aguiar would have accepted the plea offer because it misstates his sentencing exposure under the offer. In his affidavit, Aguiar says he "would ha[ve] accepted the 30-year plea offer" if his lawyer had properly advised him. Maj. Op. at 10. But Aguiar's actual sentencing exposure was not 30 years; he was facing "a likely total sentence of between 47 and 51 years." *Id.* at 2-3. Given this significant discrepancy, Aguiar's affidavit is even less probative of whether he would have accepted the plea offer. In other words, not even in his post hoc assertion does Aguiar claim he would have accepted his true likely sentence instead of going to trial.