# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**No. 20-3004**

**September Term, 2020**

FILED ON: JUNE 1, 2021

UNITED STATES OF AMERICA,
>> APPELLEE

v.

CHAD PYLES,
>> APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cr-00006-1)

Before: TATEL, MILLETT, and KATSAS, *Circuit Judges*.

## <u>J U D G M E N T</u>

This case was considered on the record from the United States District Court for the District of Columbia, as well as on the briefs of the parties. We have accorded the issues full consideration and determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). It is

**ORDERED AND ADJUDGED** that the judgment of the United States District Court for the District of Columbia be affirmed.

## I

### A

Over the course of five weeks in 2013, Chad Pyles discussed his sexual interest in young children over email with an undercover Metropolitan Police Department detective. During these conversations, Pyles emailed the detective five images of child pornography, including three with sadistic content. In September 2013, Pyles traveled from Virginia into the District of Columbia to meet the detective and have sex with two pre-teen girls. He was arrested on arrival. After his arrest, Pyles consented to a search of his computer, which uncovered additional videos of child

pornography.

Pyles was charged with traveling interstate with the intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b), and with distributing child pornography in violation of 18 U.S.C. § 2252(a)(2). Pyles' attorney, Assistant Federal Public Defender Carlos Vanegas, brokered a plea agreement under which Pyles was able to plead guilty only to the travel count and to a lesser charge of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). That deal allowed Pyles to avoid the five-year mandatory minimum sentence that would have attached to the distribution of child pornography charge. As part of the plea agreement, Pyles stipulated that the underlying facts were true, including that he had distributed child pornography to the detective.

The plea agreement contained a preliminary calculation of Pyles' Sentencing Guidelines range. That estimate included several sentencing enhancements because Pyles' offense involved material featuring a prepubescent minor under 12, material portraying sadistic or masochistic conduct, use of a computer for child pornography, and the possession of at least 300 images of child pornography. *See* U.S. SENT'G GUIDELINES MANUAL ("U.S.S.G.") § 2G2.2(b)(2), (b)(4), (b)(6), (b)(7)(C) (U.S. SENT'G COMM'N 2018). The Guidelines estimate was based on the government's understanding at the time that Pyles had no prior criminal convictions. As a result, Pyles' estimated Guidelines range in the plea agreement was 78–97 months of imprisonment. Pyles acknowledged, though, that the range could increase if any prior convictions were discovered later.

The government agreed not to oppose a sentence at the low end of the Guidelines range. But the plea agreement was explicit that this estimated Guidelines range would not bind the court.

While preparing the presentence investigation report, the Probation Office identified several new pieces of information that, in its view, warranted an increase in Pyles' Guidelines range. First, the Probation Office determined that an additional Guidelines enhancement should be applied because Pyles' offense conduct involved the distribution of child pornography. *See* U.S.S.G. § 2G2.2(b)(3)(F). The Office also uncovered several relevant prior convictions. As a result of those two findings, the Probation Office increased the estimated Guidelines sentencing range to 108–135 months.

Before sentencing, Vanegas arranged for Pyles privately to receive an expert psychosexual risk assessment. A mental health professional interviewed Pyles one time and then provided an oral report to Vanegas. Based on that conversation, Vanegas concluded that "a formal report would not be helpful" for Pyles and therefore decided not to provide a defense report to the court. S.A. 103.

In his sentencing memorandum, Vanegas urged the court to impose a sentence at the low end of the originally-agreed-to Guidelines range, despite the additional information uncovered by the Probation Office. He argued that a sentence of 108–135 months was "unfair and inconsistent with the principles of individualized sentencing called for in" the sentencing statutes, S.A. 18, because

2

many of the sentencing enhancements that applied to Pyles also apply to "most [child pornography] offenders," and so they "fail to differentiate among offenders in terms of their culpability[,]" S.A. 21 (alteration omitted) (quoting U.S. SENT'G COMM'N, FEDERAL CHILD PORNOGRAPHY OFFENSES iii (2012), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offen ses/Full_Report_to_Congress.pdf) (last accessed May 25, 2021). *See also* S.A. 18–26. Vanegas also repeatedly argued for leniency because Pyles had been the victim of sexual abuse as a child, and he included letters from Pyles' family members attesting to the abuse (which they were unaware of at the time) and to its impact on Pyles. S.A. 26–28, 36, 38. The government's sentencing memorandum agreed that a sentence at the low end of the original Guidelines estimate was appropriate.

After spending a "considerable amount of time reviewing" the sentencing submissions, the district court ordered a psychological and psychosexual evaluation to determine "[w]hether or not [Pyles] is a pedophile[.]" S.A. 53. The resulting report "diagnosed Pyles with pedophilia on a provisional basis," as well as with severe substance use disorder and antisocial personality disorder. *United States v. Pyles*, 862 F.3d 82, 84 (D.C. Cir. 2017). The report also stated that Pyles "refused to acknowledge he had a problem or needed treatment, and downplayed the severity of his actions." *Id.* at 85. The report concluded that Pyles' risk of recidivism would be moderate to high unless he participated in and completed sex offender treatment and substance abuse programs. *Id.*

Vanegas then submitted a supplemental brief that responded to the evaluation report. He argued that the report supported a lower sentence for Pyles because it found that the "most serious and violent categories" of sexual offenses and behaviors were "not applicable" to Pyles, and that Pyles' behavior—"Extreme Minimization/Denial of Offenses"—was treatable with therapy. S.A. 59. Vanegas further pointed out that, while Pyles' diagnoses of substance use disorder and antisocial personality disorder were based on "ingrained" behaviors, the pedophilia diagnosis was only "provisional" and arose exclusively from his conduct in this particular case. S.A. 60. Vanegas urged the court to address Pyles' behavior through treatment rather than through an extended sentence, emphasizing that the report "d[id] not suggest that a longer sentence [was] appropriate or warranted." S.A. 61.

At the sentencing hearing, the district court found that 108–135 months was the appropriate Guidelines range because of the distribution enhancement. S.A. 64–65; *see also* S.A. 54 (The court: "I appreciate that the parties reached a different agreement, but I think, based on the facts of this case, it was an oversight and essentially the added points have to be included in the calculation here."); S.A. 65 (government explaining that its failure to apply the distribution enhancement was an "oversight"); S.A. 73 (Vanegas agreeing that the new Guidelines range was "accurate" and that the earlier lack of a distribution enhancement was an "omission").

Nevertheless, both Vanegas and the government urged the district court to honor the parties' original agreement and vary downward to sentence Pyles to only 87 months in prison. The court was quite skeptical, though, that a downward variance would be appropriate. *See* S.A. 66 ("I must

tell you I'm hard-pressed to see how [a downward variance] could possibly be the case here."). The court observed that Pyles already "got a huge break here on how he was charged, because a simple possession of pornographic material does not carry [a] mandatory minimum, but Internet distribution carries a mandatory minimum of five years[.]" S.A. 68. In so holding, the court "tip[ped] [its] cap to Mr. Vanegas for his tenacity and prowess as a negotiator" "in making that deal" for Pyles. S.A. 69.

The court then turned to the psychological evaluation of Pyles, which it found "very distressing" because the evaluation made clear that Pyles "does not acknowledge he has a problem" and "does not think he needs treatment." S.A. 70. As a result, the court concluded that "[t]here's no way this Court could ever consider a variance downward in this case. Not even possible. I mean, I don't want to, you know, steal Mr. Vanegas' thunder, but it's not frankly—it's not conceivable." S.A. 70.

The district court then asked Vanegas to give his "best argument for [a] downward variance." S.A. 73. Vanegas argued at length, for almost fifteen full transcript pages, that a variance was warranted. *See* S.A. 73–87. First, he explained that the Sentencing Guidelines themselves are structurally flawed in child pornography cases because they fail to distinguish between more and less severe offenders. Second, Vanegas implored the judge for leniency because of the "unusual, if not remarkable, history of the things that [Pyles had] been subjected to when he was a very young child." S.A. 81. Vanegas detailed the abuses that had marred Pyles' childhood: He had "been engaging in promiscuous behavior since he was around 13, or other people did things to him that were completely inappropriate." S.A. 82. Vanegas also emphasized that Pyles' childhood had been "very traumatic" and that Pyles had "never had those traumatic experiences addressed" or received any medical or psychological help for them. S.A. 81. Vanegas concluded that this "history has to account for something in terms of what the appropriate sentence for [Pyles] [is] and what is the level of rehabilitation and treatment that he needs." S.A. 82.

After hearing from counsel for both sides, the district court ruled that "this is not a case where the low end of the Guideline [r]ange, in this Court's judgment, is appropriate." S.A. 94. Instead, the court said, "[t]he opposite is true"—"[t]his is a case in where the high end of the Guideline [r]ange is, at a minimum, appropriate." S.A. 94. In fact, the district court "wrestle[d]" with whether an upward variance was warranted. S.A. 94. But the district court ultimately was persuaded not to vary upward by Vanegas's arguments, as well as those of the government. Consequently, the district court sentenced Pyles to 132 months of incarceration and 25 years of supervised release. Vanegas did not object that the sentence was illegal.

**B**

On direct appeal, Pyles argued that the district court did not consider his non-frivolous mitigation arguments before imposing judgment. *Pyles*, 862 F.3d at 84. Specifically, he claimed that the court had not accounted for his history of childhood abuse or the failure of the child pornography Sentencing Guidelines to distinguish between individual defendants. *Id.*

4

We held that there was no plain error in the district court's failure to explain its rejection of each mitigation argument on the record. *Pyles*, 862 F.3d at 88. We found that "several factors from the record and surrounding context[,]" including the district court's "detailed explanation for the sentence[,]" made clear that the district court had "considered and implicitly rejected Pyles' contentions before rendering a within-Guidelines sentence based on the judge's reasoned decisionmaking." *Id.* at 91.

Judge Williams dissented, arguing that plain error was an incorrect standard of review, as Vanegas had "request[ed] * * * leniency multiple times despite the court's apparent unwillingness to hear" his arguments for it. *Pyles*, 862 F.3d at 95–96 (Williams, J., dissenting). But Judge Williams noted that he "would find error under even the more demanding standard [of review,]" while the majority, "apparently, would find none even under the more lenient." *Id.* at 96.

### C

In February 2019, Pyles filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He argued that Vanegas had provided ineffective assistance of counsel by failing (1) to object to the sentencing enhancement for distribution of child pornography, (2) to investigate and present an argument for a downward departure based on Pyles' childhood sexual abuse, and (3) to object to the district court's apparent failure to consider Pyles' non-frivolous arguments for leniency.

The district court denied the motion without a hearing because Pyles had not shown that Vanegas's performance was objectively unreasonable. *United States v. Pyles*, No. 14-cr-6 (RJL), 2020 WL 376787, at *1, *3 (D.D.C. Jan. 23, 2020).

### II

The district court's jurisdiction rested on 28 U.S.C. § 2255. *United States v. Hicks*, 911 F.3d 623, 626 (D.C. Cir. 2018). The district court issued a certificate of appealability, so we have jurisdiction over this appeal under 28 U.S.C. § 2253. *Id.*; *see United States v. Mitchell*, 216 F.3d 1126, 1129 (D.C. Cir. 2000).

We review the substantive denial of a Section 2255 motion claiming ineffective assistance of counsel *de novo*. *United States v. Aguiar*, 894 F.3d 351, 355 (D.C. Cir. 2018). We review the district court's decision not to hold a hearing on that motion for abuse of discretion. *Id.*

### III

On appeal, Pyles argues that the district court erred by denying his ineffective assistance of counsel claim and abused its discretion by failing to hold a hearing on his Section 2255 motion. Both of these arguments fall short.

## A

In order to succeed on his constitutional ineffective assistance of counsel claim, Pyles bears the burden of proving (1) that "counsel's performance was deficient 'under prevailing professional norms,'" in that it was objectively unreasonable; and (2) that "the deficient performance was prejudicial, creating a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]'" *Aguiar*, 894 F.3d at 355 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

As to the deficient-performance prong, case law establishes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689. To rebut this presumption, a defendant alleging ineffective assistance must "prov[e] * * * that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986); *see also Strickland*, 466 U.S. at 689; *United States v. Abney*, 812 F.3d 1079, 1087 (D.C. Cir. 2016).

The record incontrovertibly establishes that Pyles' claim flunks prong one of the *Strickland* test because he has not shown that Vanegas's representation was deficient. Vanegas's representation was objectively reasonable, and none of Pyles' arguments to the contrary are persuasive. We therefore need not reach the question of prejudice. *See Waters v. Lockett*, 896 F.3d 559, 570 (D.C. Cir. 2018).

## 1

Vanegas's representation met an objective standard of reasonableness (at the least). When he was assigned to the case, he was faced with a government investigation that had generated several key pieces of damning evidence. The government's evidence showed that Pyles (1) had distributed sadistic child pornography involving prepubescent children to an undercover detective, (2) had discussed his sexual interest in minors with the detective, (3) had traveled across state lines to meet the detective in order to have sex with two young girls, and (4) had possessed multiple videos of child pornography on his computer. The district court characterized the case as a "slam dunk" for the government because Pyles had been "caught red-handed." S.A. 69.

Against that backdrop, Vanegas provided zealous and effective representation for Pyles. Most critically, Vanegas negotiated a quite favorable plea agreement for Pyles. Based on his email conversations with the undercover detective, Pyles had been charged with distributing child pornography, which carried a five-year mandatory minimum for that count alone. But the deal Vanegas brokered with the government allowed Pyles to plead guilty to the mere possession of child pornography—a charge with no mandatory minimum and a lesser effect on his Guidelines calculation. The deal showed, as the district court put it, Vanegas's "tenacity and prowess as a negotiator[.]" S.A. 69.

Vanegas did not stop there. He also hired a private mental health professional to conduct a psychosexual evaluation of Pyles. It was only after determining that any resulting report would

not be "helpful" to Pyles' case that Vanegas declined to provide the court with a formal evaluation. S.A. 103. That decision was the type of fully investigated and informed strategic judgment that cannot support a claim of deficient representation. *See Kimmelman*, 477 U.S. at 381, 384.

On top of that, Vanegas researched and developed a thoughtfully crafted argument that the sentencing enhancements in the child pornography Guidelines should not be applied because they operate in a blanket manner that fails to distinguish between more and less severe offenders. Vanegas's criticism cited to decisions by other courts and by the Sentencing Commission itself. *See, e.g.*, S.A. 18–19, 24 (citing U.S. SENT'G COMM'N, *supra* at 322–324 (observing that the Guidelines fail to differentiate among offenders because the majority of child pornography defendants receive enhancements for images of a prepubescent minor, images depicting sadomasochistic conduct or other violence, possession of a certain number of images, and use of a computer); *United States v. Dorvee*, 604 F.3d 84, 96 (2d Cir. 2010) (same), *amended by* 616 F.3d 174 (2d Cir. 2010)).

Additionally, Vanegas highlighted the sympathetic aspects of Pyles' personal history. He repeatedly explained that Pyles had been subjected to sexual abuse as a child. And he provided evidentiary corroboration with several letters from Pyles' family members. When all was said and done, Vanegas had thoroughly presented both of those mitigating arguments—the Guidelines' failure to differentiate among offenders and Pyles' personal history—to the district court several times, both in sentencing memoranda and in person at the sentencing hearing.

Finally, throughout the case, Vanegas advocated for a sentence at the low end of the Guidelines range as originally negotiated in the plea agreement, and persuaded the government to support that position. When the Probation Office and the court calculated a range higher than the parties' original estimate because of Pyles' prior convictions and distribution of child pornography, Vanegas did not waste his time pursuing a futile argument that the Guidelines range should be lower. *See United States v. Watson*, 717 F.3d 196, 198 (D.C. Cir. 2013) (no deficient performance where counsel declines to pursue a "losing argument"). Instead, he argued that the court should honor the plea agreement and vary downward from the new range when issuing a sentence. His advocacy was so strong that the government took the unusual step of agreeing that the downward variance sought by Pyles was appropriate. Although the court did not agree, Vanegas's arguments persuaded the court not to impose an upward variance.

In short, the record shows that Vanegas was an engaged, thoughtful, and zealous advocate who made effective strategic decisions aimed at securing the lowest possible sentence for Pyles.

**2**

Pyles' arguments that Vanegas provided constitutionally deficient representation all fail.

*First*, Vanegas's failure to object to the district court's application of the distribution enhancement was not even error, let alone deficient representation. In the statement of offense accompanying his plea agreement, Pyles stipulated to distributing child pornography over the

internet. The Sentencing Guidelines require courts to apply a two-level sentencing enhancement "[i]f the defendant knowingly engaged in distribution" of child pornography. U.S.S.G. § 2G2.2(b)(3)(F). Even though courts are not strictly required to sentence defendants within the calculated Guidelines range, *see United States v. Booker*, 543 U.S. 220, 245 (2005), "the sentencing court 'must calculate and consider the applicable Guidelines range' as its starting point," *United States v. Mattea*, 895 F.3d 762, 766 (D.C. Cir. 2018) (quoting *United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006)). The distribution enhancement squarely applied, and its language is mandatory in calculating the Guidelines range. *See id.* (noting "mandatory language" of computer-use enhancement for child pornography offense). Any objection to its application would have been doomed, and so was quite appropriately omitted. *See Watson*, 717 F.3d at 198.

Pyles, for his part, fails to identify any viable objection to the enhancement that Vanegas might have advanced. He only vaguely asserts that "[t]here [was] a reason the government did not charge" distribution and that Vanegas "did not think the enhancement was appropriate," which the court "will never know * * * because the record is silent." Pyles Br. 11. That argument is belied by the record. The government *did* initially charge Pyles with distribution of child pornography— Pyles had the opportunity to plead to the lesser charge of possession of child pornography only as a result of Vanegas's negotiations on his behalf. And with regard to the possession plea, the district court, the government, and Vanegas all agreed that the distribution enhancement was appropriate and that the parties' failure to include it in the plea agreement's Guidelines calculation was an accident. *See* S.A. 54, 65, 73.

*Second*, the record flatly refutes Pyles' claim that Vanegas failed to investigate and present an argument for a downward departure based on Pyles' early childhood experience of sexual abuse. As noted above, Vanegas sought out and obtained for the defense an expert analysis of Pyles' psychosexual risk. When the initial report indicated that the evidence would hurt rather than help Pyles, Vanegas made the sensible judgment call that sharing a full psychosexual report with the court would not benefit his client. That is the type of commonplace and reasonable strategic litigation decision that does nothing to establish deficient representation. *See Kimmelman*, 477 U.S. at 384; *see also United States v. Toms*, 396 F.3d 427, 433 (D.C. Cir. 2005) ("[C]ounsel's decision to stipulate to certain evidence, like his decisions to offer or object to evidence, involves a strategic choice, which is 'virtually unchallengeable' if made after thorough investigation[.]") (quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)); *United States v. Valencia-Rios*, 639 F. Supp. 2d 98, 112 (D.D.C. 2009) ("The choice of how to present evidence falls within the realm of litigation strategy that is generally protected from challenge."), *aff'd*, 391 F. App'x 885 (D.C. Cir. 2010).

Beyond that, Vanegas presented evidence of and argued for leniency based on Pyles' childhood sexual abuse in both his sentencing memorandum and at the hearing. Pyles, for his part, identifies no favorable case law, helpful factual evidence, or additional argument that further investigation might have uncovered.

*Third*, Vanegas's decision not to object on the ground that the district court failed to

specifically reject each mitigating factor was not error, let alone constitutionally deficient conduct. Any such objection would have failed because the district court did, in fact, consider and reject Pyles' mitigation arguments to the extent required by governing Supreme Court and circuit precedent. *See Pyles*, 862 F.3d at 91–94. The district court reconfirmed in denying Pyles' Section 2255 motion that it had fully considered Vanegas's mitigation arguments at sentencing. *See Pyles*, 2020 WL 376787, at *3 ("[I]t was 'quite evident' that I 'read, listened to, and considered the mitigation arguments' offered, including the presentence report, defendant's sentencing memorandum, and the psychological evaluation.") (quoting *Pyles*, 862 F.3d at 93).

Yet Pyles argues that Vanegas's failure to object was deficient because it resulted in this court applying plain error review on direct appeal. But as Judge Williams' dissenting opinion notes, the majority opinion shows that any such objection would have been pointless because the district court's conduct also would have survived even the more searching review that Pyles seeks. *See Pyles*, 862 F.3d at 96 (Williams, J., dissenting); *see also id.* at 94 (majority opinion) ("The record and context of this case make clear that the judge did not violate any of the settled standards set forth in [relevant precedent] when he imposed a within-Guidelines sentence, and there is enough in the record to allow for meaningful appellate review."). That is why the district court concluded that the outcome of "Pyles'[] appeal did not turn on the Circuit Court's application of a plain error standard of review due to his counsel's failure to object, but rather on the dearth of any compelling arguments for leniency." *Pyles*, 2020 WL 376787, at *3. As a result, Vanegas's lack of objection did not constitute ineffective assistance of counsel.

In sum, none of Pyles' arguments come close to rebutting the presumption, strongly corroborated by the record, that Vanegas provided reasonable assistance of counsel.

**B**

Pyles' separate claim that the district court should have held what he calls a "full" or "evidentiary" hearing on his Section 2255 motion also fails. Pyles Br. 8, 10, 15. A district court may deny a motion for relief under Section 2255 without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). "Only where the [Section] 2255 motion raises 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection' must a hearing be held." *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

Because the existing record readily shows that Pyles failed to carry his burden of establishing deficient representation, and because Pyles does not identify any "'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection[,]'" the district court did not abuse its discretion in declining to conduct an evidentiary hearing before denying the Section 2255 motion. *See Pollard*, 959 F.2d at 1030–1031; *see also United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996).

9

**IV**

For all of those reasons, the judgment of the district court is affirmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc*.  *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk